IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  12-cv-01060-MSK-MJW


JAMIE DAVIS,

Plaintiff(s),

v.

MARK KELLAR, Individually and in his official capacity as Health Services Administrator at FCI Florence,
LISA MCDERMOTT, Individually and in her official capacity as Assistant Health Services Administrator,
PETER BLUDWORTH, Associate Warden, Individually and in his official capacity,
DR. DAVID ALLRED, Individually and in his official capacity as Clinical Director at FCI Florence,
DR. GEORGE SANTINI, Individually and in his official capacity as Staff Physician at FCI Florence,
PA CARI RITTER, Individually and in her official capacity as mid-level provider at FCI Florence,
PA A. VINYARD, Individually and in her official capacity as mid-level provider at FCI Florecence,
MIKE GOODIN, Individually and in his official capacity as Chief Pharmacist at FCI Florence,
GILBERTA TRUJILLO, Individually and in her official capacity as Medical Secretary, and
RN S. HENDRICKS, Individually and in her official capacity as Registered Nurse at FCI Florence,

Defendant(s).

---

### RECOMMENDATION ON
### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) (Docket No. 24)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case was referred to the undersigned pursuant to the Order Referring Case

2

issued by now Chief Judge Marcia S. Krieger on June 20, 2012.  (Docket No. 12).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, Jamie Davis, asserts the following in his

Prisoner Complaint[1] brought pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown

Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), which was dated

April 18, 2012.

**Alleged Acts Before April 18, 2010.**  Plaintiff started having nose bleeds in

January 2009.  On August 30, 2009, he was seen by defendant PA A. Vinyard, who

informed plaintiff the nose bleeds were caused by dryness and prior drug use.  The

nose bleeds continued for two years.  On October 23, 2009, plaintiff was seen by

defendant Dr. Santini for a regular chronic care appointment.  Plaintiff reported the nose

bleeds and the length of time he had been having them, and Dr. Santini informed him

without examination that they were caused by the altitude and dryness, but plaintiff has

been here for ten years without a problem.  The nose bleeds continued, and on January

26, 2010, plaintiff went to sick call and asked Vinyard about being seen by a specialist.

Vinyard responded that plaintiff did not need a specialist, and Vinyard cauterized

plaintiff's nose bleed with silver nitrate.  Since Vinyard was not a specialist in the field of

---

[1]The court notes that on August 1, 2012, the plaintiff tendered a document
entitled "Amended Prisoner Complaint and or Substitution of Defendant " (Docket No.
18).  The document was apparently docketed merely as a tendered pleading because
the plaintiff did not file a motion as required by Fed. R. Civ. P. 15(a).  It appears from a
liberal reading of that document, however, that plaintiff is actually moving to substitute
the United States as a defendant for defendants Goodin and Ritter and to bring a
Federal Tort Claims Act claim against the United States based upon plaintiff's
allegations against Goodin and Ritter in his original pleading.  He did not, in fact, tender
a proposed Amended Complaint in which he makes this requested substitution or
amendment.  This document will be addressed in the text below.

3

Ear Nose and Throat ("ENT"), she was not qualified to make that call and did more damage to plaintiff's nose.  Vinyard also falsified plaintiff's medical records by indicating that prolonged drug use through plaintiff's nose was the cause of plaintiff's nose bleeds. The following month (February 2010) Vinyard used the silver nitrate again to cauterize the bleeding.  Plaintiff asked her if this was harmful, but she said she did not want to do it again.  Plaintiff again requested to see a specialist, but Vinyard again refused.  The nose bleeds continued.  Plaintiff went to sick call on March 29, 2010, and saw defendant PA Cari Ritter who ordered blood work (which came back negative) and examined plaintiff's nose where she could see the dried flood.  Plaintiff explained the problems, his concerns, and his discomfort, and questioned why he could not see a specialist.

**Alleged Acts after April 18, 2010.**  On May 10, 2010, plaintiff went to sick call to report a nose bleed that would not stop.  "They" again used silver nitrate to try and stop the bleeding, but after that treatment, the nose bleeds became even stronger, some days a constant trickle.  On May 18, 2010, plaintiff saw Dr. Santini and informed him of the problems.  Santini examined plaintiff's nose and ordered a surgical consult.  On June 16, 2010, plaintiff's case was presented to the U.R.C. committee, but plaintiff was denied the consult.  The members of that committee were defendants Mark Kellar, Lisa McDermott, Peter Bludworth, Dr. David Allred, Dr. George Santini, PA Cari Ritter, PA A. Vinyard, and Gilberta Trujuillo.  Plaintiff was referred back to staff physician Dr. Santini.

The nose bleeds continued.  Plaintiff returned to sick call on November 19, 2010, because the bleeding would not stop, and he couldn't breath properly because of the pain.  Dr. Santini examined plaintiff's nose and found lesions, scabs, and bleeding and

4

resubmitted plaintiff for a consult.  The next day plaintiff again reported to sick call

because there was now a hole completely through his nose.

On December 20, 2010, the facility was on lock down, and they were locked

down for weeks and not given medical care.  When they were put on modified lock

down, plaintiff spoke with defendant RN Hendricks, requesting nose spray, and she told

plaintiff to buy it off commissary, but they were not allowed to shop during lock down.

Plaintiff's nose bleeds continued, and plaintiff was never given treatment or medication.

Plaintiff filed grievances but was denied help by the Warden when she agreed with the

medical department that plaintiff was receiving the proper care.  Plaintiff approached

non-party Captain Klein, showing him the hole in his nose, and he informed plaintiff to

go to the medical department the next day.  Plaintiff, however, was denied medical care

by unqualified staff, causing prolonged pain and suffering.  Plaintiff was denied

medication that would help this by unqualified staff because they were too busy.

Finally, on December 29, 2010, plaintiff was called in to see the Clinical Director,

defendant Dr. David Allred, for a consultation regarding plaintiff's nose.  Allred saw the

hole in plaintiff's nose and interrogated plaintiff about prolonged drug use, which was

not the case.  Allred was not concerned about plaintiff's nose, only what was to blame.

On January 11, 2011, plaintiff was approved for a surgical consult with an ENT

specialist who saw plaintiff on February 1, 2011, and prescribed medications, ointments,

and sprays.  Plaintiff asked her if this could have been prevented, and she said yes, the

ointment would have stopped the bleeding and allowed the nose to heal the treatments

done by unqualified staff who worsened plaintiff's condition, likely producing the hole in

his nose.  The specialist informed the Florence staff of the immediate need for surgery.

5

On February 10, 2012, plaintiff was approved for surgery, which was not performed until June 8, 2012.  Skin grafts were placed in plaintiff's nose to heal the hole.  The specialist ordered two different nasal sprays and pain medication, but defendant Chief Pharmacist Mike Goodin refused to fill the nasal sprays.

On June 18, 2012, plaintiff saw the specialist who asked if plaintiff was using the sprays.  Plaintiff informed her that "they" refused to give them to him, and she said plaintiff needed it to protect the skin grafts.  She said the grafts looked like leather and appeared to be failing.  After returning from that appointment, plaintiff complained and received the sprays, but it was too late; the grafts had died and failed.

On July 19, 2012, the skin grafts fell out, and plaintiff informed medical who informed the specialist.  The specialist informed medical that the only thing that could be done was plastic inserts which would obstruct plaintiff's breathing.  Plaintiff is still having nose bleeds, headaches, and pain in his nose, and the hole in his nose is still there.

None of the people plaintiff saw at the medical department for over a two-year period were ENT specialists.  He was denied care and given repeated treatment that damaged his nose.  He was denied access to an ENT specialist, even after the staff physician recommended a consult, in order to save money,

Each defendant wrongfully and with deliberate indifference denied and delayed plaintiff's medical care, violating his Fifth, Eighth, and Fourteenth Amendment rights.  That denial inflicted extreme pain and suffering for a prolonged period, resulting in cruel and unusual punishment and permanent damage to his nose.  Vinyard was unqualified to provide the treatment rendered, refused to allow plaintiff to see a specialist, cauterized plaintiff's nose three times causing it to bleed more and causing a hole in

6

plaintiff's nose, and falsified plaintiff's medical records to try to place blame on plaintiff's prolonged drug use, which is not true.  Dr. Santini blamed the dryness for the nose bleeds, concurred in Vinyard's treatments, and finally recommended plaintiff to see a surgeon.  The URC committee (defendants Mark Kellar, Lisa McDermott, Peter Bludworth, Dr. David Allred, Dr. George Santini, PA Cari Ritter, PA A. Vinyard, and Gilberta Trujillo) refused Santini's request and thus delayed medical care.  Goodin refused to give plaintiff the prescribed nasal sprays and thus interfered with prescribed medical treatment, resulting in permanent damage.

Plaintiff raises three claims for relief: (1) violation of his Eighth, Fifth, and Fourteenth Amendment rights through deliberate indifference to medical needs, (2) defendants forced him to live and endure cruel and unusual punishment and wanton infliction of pain when he was not given nasal spray while on lock down, and (3) denial of medical care with deliberate indifference causing wanton infliction of pain when he was not given the prescribed nasal spray after his surgery by defendant Goodin. Plaintiff seeks a second opinion regarding his nose and constant bleeding, compensatory damages in the amount of $300,000, and costs and fees.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff filed a Response (Docket No. 26), and defendants filed a Reply (Docket No. 33).  The court has carefully reviewed the motion, Response (excluding the exhibits),[2]

---

[2] These exhibits consisted of various medical reports which are not relevant to the defendants' arguments for dismissal.  The court thus has not considered the exhibits

7

and Reply as well as the court file and applicable Federal Rules of Civil Procedure and

case law.  The court now being fully informed, makes the following findings, conclusions

of law, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the
subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction,
federal courts may only adjudicate cases that the Constitution and
Congress have granted them authority to hear.  *See* U.S. CONST. art. III,
§ 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes
conferring jurisdiction on federal courts are to be strictly construed.  *See F
& S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule
12(b)(1) motion to dismiss "must be determined from the allegations of
fact in the complaint, without regard to mere conclusory allegations of
jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
The burden of establishing subject matter jurisdiction is on the party
asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d
906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.
First, if a party attacks the facial sufficiency of the complaint, the court
must accept the allegations of the complaint as true.  *See Holt v. United
States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks
the factual assertions regarding subject matter jurisdiction through
affidavits and other documents, the court may make its own findings of
fact.  *See id.* at 1003.  A court's consideration of evidence outside the
pleadings will not convert the motion to dismiss to a motion for summary
judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts

_____

and has not converted the motion to dismiss to a motion for summary judgment.

8

to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008

WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level."  <u>Id.</u>  "[A] plaintiff must

'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a

motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could

prove *some* set of facts in support of the pleaded claims is insufficient; the complaint

must give the court reason to believe that *this* plaintiff has a reasonable likelihood of

mustering factual support for *these* claims."  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Twombly</u>, 127 S. Ct. at 1974).

 "[P]lausibility refers 'to the scope of the allegations in a complaint: if they are so

general that they encompass a wide swath of conduct, much of it innocent, then the

plaintiff[] 'ha[s] not nudged [his] claim[] across the line from conceivable to plausible.'"

<u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012).  Furthermore, "[t]he

nature and specificity of the allegations required to state a plausible claim will vary

based on context."  <u>Id.</u>  "[T]he *Twombly/Iqbal* standard is 'a wide middle ground

between heightened fact pleading, which is expressly rejected, and allowing complaints

that are no more than labels and conclusions or a formulaic recitation of the elements of

a cause of action, which the Court stated will not do.'"  <u>Id.</u>

9

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126-27 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  <u>Khalik</u>, 671 F.3d at 1190 (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  <u>Id.</u> at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  <u>Id.</u>

**Public Health Service Employees.**  Defendants correctly assert that the plaintiff's individual capacity <u>Bivens</u> claims against defendants Goodin and Ritter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because as commissioned officers of the Public Health Service performing a medical or related function within the course and

10

scope of their employment (see Affidavits of Goodin and Ritter - Docket Nos. 24-1 and

24-2), the court is without jurisdiction over the <u>Bivens</u> claims against them.  <u>See</u>

<u>Freeman v. Vineyard</u>, 2012 WL 1813119 (D. Colo. May 18, 2012).  The Federal Tort

Claims Act is the exclusive remedy "for damage for personal injury . . . resulting from

the performance of medical [treatment] by and commissioned officer or employee of the

Public Health Service."  42 U.S.C. § 233(a).  <u>See</u> <u>Hui v. Castaneda</u>, 130 S. Ct. 1845,

1851 (2010) (recognizing that <u>Bivens</u> claims against PHS officers by inmates for

inadequate medical treatment are preempted by § 233(a)).

      **<u>Official Capacity Claims.</u>**  Defendants further correctly assert that the plaintiff's

claims against them in their official capacities for compensatory damages should be

dismissed pursuant to Rule 12(b)(1).  A "*Bivens* claim[] cannot be asserted directly

against . . . federal officials in their official capacities . . . ."  <u>Smith v. United States</u>, 561

F.3d 1090, 1093 (10th Cir. 2009).  "When an action is one against named individuals, but

the acts complained of consist of actions taken by defendants in their official capacity as

agents of the United States, the action is in fact one against the United States."

<u>Atkinson v. O'Neill</u>, 867 F.2d 589, 590 (10th Cir. 1989) (citations omitted).  However, it is

well established that the United States is immune from suit unless it has consented to

be sued.  <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980); <u>see</u> <u>United States v.</u>

<u>$30,006.25 in United States Currency</u>, 236 F.3d 610, 613 (10th Cir. 2000) (recognizing

that a "waiver of sovereign immunity cannot be implied but must be unequivocally

expressed").  Thus, federal employees, when sued in their official capacities, are

immune from suit unless sovereign immunity has been waived.  <u>Atkinson</u>, 867 F.2d at

590.  As pertinent here, the United States has not waived its sovereign immunity for

constitutional torts.  See Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine

of sovereign immunity precludes a Bivens action against the United States or its agents

acting in their official capacities).  Plaintiff seems to confess this issue.  (See Docket No.

26 at 10).  Therefore, it is recommended that the plaintiff's Bivens claims for

compensatory damages against the defendants in their official capacities be dismissed.

**Fourteenth Amendment Claims.**  Defendants also correctly contend that the

plaintiff's Fourteenth Amendment claims should be dismissed because the Fourteenth

Amendment applies only to state, not federal, action.  Here, plaintiff alleges only

conduct by federal government actors, and the prison where the events allegedly

occurred is a federal facility.  Therefore, plaintiff fails to state a Fourteenth Amendment

claim.  See Stewart v. Bloodworth, 2013 WL 452314, at *1 n.2 (D. Colo. Jan. 2, 2013),

adopted by 2013 WL 452119 (D. Colo. Feb. 6, 2013).

**Statute of Limitations Defense.**  Defendants further correctly assert that some

of the plaintiff's claims are time barred.  "A Bivens action is subject to the limitation

period for an action under 42 U.S.C. § 1983, and that limitation period is set by the

personal injury statute in the state where the cause of action accrues."  Roberts v.

Barreras, 484 F.3d 1236, 1238 (10th Cir. 2007).  Colorado's general two-year statute of

limitations for personal injury actions, § 13-80-102, C.R.S., thus applies to this case.

Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares

of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law, rather than

state law, however, determines when a federal claim accrues.  See Industrial

Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994).

12

"Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Van Tu v. Koster, 364 F.3d 1196, 1199 (10th Cir. 2004) (internal quotations omitted).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Industrial Constructors Corp., 15 F.3d at 969.

The issue of tolling is also governed by state law. Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995).  "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." Garrett v. Arrowhead Imp. Ass'n, 826 P.2d 850, 855 (Colo. 1992).  Under Colorado law, "an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996).  "The Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." Braxton v. Zavaras, 614 F.3d 1156, 1160 (10th Cir. 2010).

In this case, the defendants note that the plaintiff's Complaint was filed on April 19, 2012 (Docket No. 1), and they assert that plaintiff's claims of deliberate indifference based on occurrences more than two years before then are barred by the two-year statute of limitations.  The court notes that the pleading is dated April 18, 2012.  Under the prison "mailbox rule," the Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court.  See Houston v. Lack,

13

487 U.S. 266 (1988).  Therefore, absent tolling, any claims based upon acts that

allegedly took place more than two years before that date are time barred.

     In his Response, plaintiff claims that:

> until he saw the specialist he had no idea that his rights had been violated.  This
> happened on 02/11/2011, the plaintiff had to file his administrative remedies in
> order to be in complaince [sic] with prison litagation [sic] reform act and this took
> 6 months to accomplish.  The plaintiff contend that the issue of being time barred
> is not an issue.  The plaintiff is not versed or knowledgable [sic] in the field of
> medical science and was dependent on the care given by the providers at FCI
> Florence.  There [sic] actions show a state of mind of indifference of trying to
> protect the administrators [sic] budgets and not the best intrest [sic] of the
> plaintiff.  Plaintiff filed an amended complaint to the original complaint and the
> court never sent the complaint back as deficient or returned the complaint.

(Docket No. 26 at 9).

     This court finds, however, that the plaintiff has not met his burden of showing that

the statute of limitations has been tolled.  As defendants correctly assert in their Reply

(Docket No. 33 at 3), plaintiff's claims accrued when he knew of or had reason to know

of his injury and the cause of that injury, not when he knew his rights had allegedly been

violated.  "[A] plaintiff need not understand the legal basis of his claim before the statute

of limitations will begin to run."  <u>Coleman v. Morall</u>, 64 Fed. Appx. 116, 119 (10th Cir.

2003).  <u>See</u> <u>Robinson v. Younger</u>, 2007 WL 2697621, at * (D. Colo. Sept. 11, 2007)

(cause of action accrues when the facts that would support it are or should be apparent,

not when the plaintiff realizes that the facts support a legal claim) (discussing <u>United

States v. Kubrick</u>, 444 U.S. 111 (1979), which found that the plaintiff's claim accrued on

the date he learned he was injured even if he did not know that the alleged tortfeasor

was negligent).  Plaintiff's allegations in his Complaint establish that he knew about his

continuous nose bleeds, knew they were allegedly not successfully treated by the

14

repeated cauterization, knew they were allegedly made worse by such treatment, and knew his requests to see a specialist were denied.  Therefore, plaintiff's allegations in his Complaint establish that he knew of his alleged injury (continuous nose bleeds) and their alleged cause (failure to treat properly and failure to refer to a specialist) when he was allegedly denied treatment and referral to a specialist in 2009 and early 2010.

Furthermore, plaintiff has made no showing that the requirement that he exhaust his administrative remedies before commencing an action interfered with his ability to file a timely complaint.  See Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007). Plaintiff claims that it took him six months to exhaust his administrative remedies, but he does not explain why that prevented him from timely filing this action before the two-year limitations period expired.  Therefore, plaintiff has not shown that he is entitled to equitable tolling.  See Braxton v. Zavaras, 614 F.3d 1156, 1161-63 (10th Cir. 2010) (discussing diligence requirement for equitable tolling under Colorado law).

Based upon these findings, it is recommended that the plaintiff's Bivens claims that are based upon events that allegedly occurred on or before August 18, 2010 (outlined above), be dismissed with prejudice as time barred.

**Eighth Amendment Medical Claims.**  The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. Amend. VIII.  In order to state an Eighth Amendment claim concerning medical care, "'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  Self v. Crum, 439 F.3d 1227, 1230

(10th Cir.) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).[3]  "[A] prison official

cannot be found liable under the Eighth Amendment . . . unless the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837

(1994).  "Medical malpractice does not become a constitutional violation merely

because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. at 106.  A complaint that

a defendant "has been negligent in diagnosing or treating a medical condition does not

state a valid claim of medical mistreatment under the Eighth Amendment."  Id. at 105-

06.  Additionally, "a delay in medical care 'only constitutes an Eighth Amendment

violation where the plaintiff can show that the delay resulted in substantial harm.'"

Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir.2001) (quoting Oxendine v. Kaplan,

241 F.3d 1272, 1276 (10th Cir.2001)); White v. Colorado, 82 F.3d 364, 366–67 (10th

Cir.1996) (holding that delay in medical treatment does not constitute a constitutional

violation unless it can be shown that the delay resulted in substantial harm); Sealock v.

Colorado, 218 F.3d 1205, 1210 (10th Cir.2008) (noting that "not every twinge of pain

suffered as the result of delay in medical care is actionable").

_____

[3]Plaintiff also alleges violations of the Fifth Amendment, but plaintiff is a convicted prisoner, not a pretrial detainee, and thus his claims arise under the Eighth Amendment rather than the Fifth Amendment Due Process Clause.  In any event, the deliberate indifference standard is the same under both the Eight Amendment and the Fifth Amendment's Due Process Clause.  See Daniel v. U.S. Marshal Service, 188 Fed. Appx. 954, 961-62 (11th Cir. 2006); Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000); Batista v. New York Suffolk County, 2013 WL 3759933, at *3 (E.D.N.Y. July 10, 2013).

16

In this case, reading plaintiff's pleading liberally, accepting all factual allegations in the pleading as true, and resolving all reasonable inferences in the plaintiff's favor, this court finds that the plaintiff has failed to state a <u>Bivens</u> claim against the remaining defendants.  Plaintiff's own averments show that he did receive continued treatment for his nose bleeds.  While plaintiff appears to contend that a more appropriate treatment was not used, a defendant's refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference.  <u>See</u> <u>Perkins v. Kansas Dep't of Corr.</u>, 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation").  In addition, a prisoner's contention that he was denied treatment by a specialist is generally insufficient to establish a constitutional violation.  <u>Duffield v. Jackson</u>, 545 F.3d 1234, 1239 (10th Cir. 2008) ("The decision that a patient's condition requires a specialist is a decision about the patient's course of treatment, and 'negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment.'"); <u>Self v. Crum</u>, 439 F.3d at 1232 ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.  Matters that traditionally fall within the scope of medical judgment are such decisions as to whether to consult a specialist or undertake additional medical testing."); <u>Ledoux v. Davies</u>, 961 F.2d 1536, 1537 (10th Cir. 1992) (denial of treatment by a specialist is insufficient to establish a constitutional violation).  Plaintiff's allegations that certain medical staff were not qualified and that procedures were not done properly also do not state an Eighth Amendment claim.  "When a [medical provider] provides treatment, albeit carelessly or inefficaciously, to a

17

prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

With regard to plaintiff's visit to sick call on May 10, 2010, to report a nose bleed that would not stop, he received treatment, namely, another usage of silver nitrate. While such treatment was allegedly not successful and allegedly made plaintiff's nose bleeds stronger, the lack of success does not constitute deliberate indifference. Just over a week later, on May 18, 2010, plaintiff saw Dr. Santini who examined plaintiff's nose and ordered a surgical consult. Those actions also do not constitute deliberate indifference.

The following month, on June 16, 2010, plaintiff's case was presented to the U.R.C. committee, consisting of defendants Kellar, McDermott, Bludworth, Allred, Santini, Ritter, Vinyard, and Trujuillo, but plaintiff was denied the consult recommended by Santini, and plaintiff was referred back to Santini. At that point the hole in plaintiff's nose had not yet presented itself. The URC's decision at that time was merely a difference of medical opinion with regard to the need for a referral to a specialist, which does not rise to the level of a constitutional violation. A disagreement between experts or a medical difference of opinion does not give rise to an Eighth Amendment claim of deliberate indifference. See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005); Supre v. Ricketts, 792 F.2d 958, 962-63 (10th Cir. 1986).

Plaintiff states he returned to sick call on November 19, 2010, because the nose bleeding would not stop, and he couldn't breath properly because of the pain.

18

According to plaintiff, Dr. Santini examined plaintiff's nose and found lesions, scabs, and bleeding and resubmitted plaintiff for a consult.  Once again, such alleged actions  do not state a claim of deliberate indifference.  The next day, plaintiff again reported to sick call because there was now a hole completely through his nose.  Plaintiff, however, does not state who examined him that day or what was done.

The following month, on December 20, 2010, the facility was put on lock down. On an unspecified date during this lock down, plaintiff allegedly spoke with defendant RN Hendricks, requesting nose spray, and she allegedly told plaintiff to buy it off commissary.  Plaintiff complains that they were not allowed to shop on lock down, but he does not allege that Hendricks was aware of this limitation, had examined him, had any knowledge of his nose bleeds or any other medical issues, or was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also drew the inference.  Therefore, he has also not stated a deliberate indifference claim against Hendricks.

Thereafter, on an unspecified date, plaintiff approached non-party Captain Klein, showing him the hole in his nose, and he informed plaintiff to go to the medical department the next day.  On December 29, 2010, plaintiff was called in to see the Clinical Director, defendant Dr. Allred, for a consultation for his nose.  Allred saw the hole in plaintiff's nose and interrogated plaintiff about prolonged drug use, which was not the case.  Plaintiff does not allege any facts showing any deliberate indifference by Allred.

On January 11, 2011, plaintiff was approved for a surgical consult with an ENT

19

specialist who saw him on February 1, 2011, and prescribed medications, ointments, ands sprays, and the Florence staff was informed of the need for surgery.  That surgery was approved ten days later on February 10, 2012, and was performed on June 8, 2012; skin grafts were placed in plaintiff's nose to heal the hole.  Plaintiff does not allege any facts that the delay between the time he was approved for surgery and the time the surgery was actually done caused any harm, let alone the requisite "substantial harm" needed to state an Eighth Amendment claim.

The specialist/surgeon ordered two different nasal sprays and pain medication. Plaintiff received the pain medication, but defendant Chief Pharmacist Mike Goodin refused to fill the nasal sprays scripts, and ultimately the grafts failed, allegedly because plaintiff did not receive the nasal sprays.  As found above, however, defendant Goodin is immune from a <u>Bivens</u> suit.

In sum, this court finds that the plaintiff has failed to state an Eighth Amendment claim of deliberate indifference to a serious medical need.  Therefore, it is recommended that his <u>Bivens</u> claims be dismissed.

**Federal Tort Claims Act.**  As noted above, on August 1, 2012, plaintiff tendered a document entitled:  "Amended Prisoner Complaint and or Substitution of Defendant" (Docket No. 18).  Plaintiff merely states in that document:

> Comes now the Plaintiff Jamie L. Davis, before this court with a motion to Amend Prisoner complaint or substitute defendants.  The Plaintiff is amending the complaint to include the United States Goverment [sic].  The Plaintiff filed Federal Tort Claim against the defendants to include to [sic] Public Health Services Officers, Chief Pharmacist Mike Goodin, PA Cari Ritter both Commissioned Officers in the Public Health Services.  The Federal Tort Claim Number is TRT-NCR-2012-00688 under

20

the Federal Tort Claims Act, Title 28 USC § 1346(b), 2671 et.seq. [sic], alleging liabilty [sic] of the United States Goverment [sic].  This Claim was answered on 02-13-2012.  The Plaintiff wishes to include all previous claims for the defendants Goodin and Ritter.  By filing the Tort Claim against the Public Health Services Officers Goodin and Ritter the remedy against the United States Goverment [sic] is provided by 28 USC § 1346(b) and 2672 for damage and for personal injury, including death, resulting from performance of medical, surgical, dental or related function including conduct of clinical studies or investigation, by any Commissioned Officer or employee of the Public Health Service while acting within the scope of his office or employment shall be exclusive of any other civil action or proceeding by reason of the same subject matter agaainst [sic] the Officer or employee whose act or omission gave rise to claim. Although Defendants Goodin and Ritter maynot [sic] be personally subject to Bivens actions for harm arising out of such conduct 42 USC § 233(a) the fact that a Federal Tort Claim was filed the United States Goverment [sic] assumes the liability.  Plaintiff now addresses the possibilty [sic] that the substitution of the United States Goverment [sic] as a defendant and a conversion of the Plaintiff's Bivens claim under the Federal Tort Claims Act would be appropriate in the circumstances presented here for the defendants Goodin and Ritter.  Plaintiff ask this court to consider the possibility that a substitution of defendant may be appropriate in this instance.  Plaintiff asks this court to consider this motion and the United States Goverment [sic] be considered a defendant.

(Docket No. 18).

In their motion to dismiss, defendants assert that to the extent the court

construes this filing (Docket No. 18) as effectively amending the Complaint to include a

FTCA claim against the United States, such a claim should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6).  More specifically, defendants assert that the plaintiff has failed

to state any specific state law tort as the basis of his FTCA claim and thus has failed to

allege an FTCA claim.  See F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) (The "source of

substantive liability under the FTCA" is the law of the state where the alleged negligent

act or omission occurred.).  They further argue that plaintiff misunderstands the FTCA

when he apparently contends that under the FTCA the United States assumes the liability for the constitutional torts of Goodin and Ritter.  As correctly asserted by the defendants, a constitutional tort is not cognizable under the FTCA, id. at  477, and plaintiff here has not alleged any non-constitutional torts in his pleading.  Therefore, as currently pled, plaintiff has not stated a FTCA claim upon which relief can be granted, and such claim should thus be dismissed without prejudice.  It is, however, recommended that the plaintiff be given an opportunity to move for leave to amend his pleading to state a FTCA claim.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED that the defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Docket No. 24) be granted.  It is, however, recommended that the plaintiff be given an opportunity to move for leave to amend his pleading to state a FTCA claim.

NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.

22

**Makin v. Colorado Dep't of Corrections,** 183 F.3d 1205, 1210 (10th Cir. 1999); **Talley**

**v. Hesse,** 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  August 5, 2013                    s/ Michael J. Watanabe
          Denver, Colorado                   Michael J. Watanabe
                                                      United States Magistrate Judge